UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | 1:11-CR-184-JAW |
| | ) | |
| MARK RAZO, | ) | |
| | ) | |
| Defendant | ) | |

## *REDACTED*[1] RECOMMENDED DECISION
## ON MOTION TO SUPPRESS WIRE INTERCEPTS

Defendant Mark Razo seeks the suppression of intercepted voice and text communications obtained by means of a multiple court wiretap/intercept orders. Razo contends that the Government's affidavits in support of the wiretap orders fail to demonstrate the need for wiretaps to investigate and prosecute the criminal conduct under investigation. The Court referred Razo's Motion to Suppress Wire Intercepts (ECF No. 57) for report and recommended decision. I now recommend that the Court deny the motion.

Defendant and his co-defendant, Barry Diaz, are charged in a Second Superseding Indictment with three counts of knowing and intentional use of a communication facility (counts I-III) and one count of conspiracy to distribute and possess with intent to distribute controlled substances (count IV). In support of its investigation of the alleged offenses, the Government sought and obtained court orders to intercept and preserve wire and electronic communications.

---

[1] This recommended decision is redacted because the underlying wiretaps discussed herein remain under seal on the docket and are only available in paper format from the clerk's office. As the parties discuss some of the content of those intercepts in their memoranda, I am uncertain of the necessity for the continued sealing of this information, nevertheless I do not believe it is appropriate for me to disregard the prior orders sealing these matters. In the event both parties agree that there is no reason for these matters to remain under seal and that this recommendation can be made publicly available in its entirety, they should file a joint motion to unseal the unredacted version of the recommendation. In the event the parties file no such motion, the district judge will determine whether the unredacted recommendation is to remain under seal. The publicly available redacted version of the Recommended Decision omits roughly 7 pages of double-spaced text which discuss the contents of government affidavits.

The Government's interception of wire, oral, and electronic communications is permitted under Title III of the Omnibus Crime Control and Safe Streets Act of 1968, subject to multiple conditions, including court authorization.[2]  18 U.S.C. §§ 2516, 2518.  The statutory procedure for obtaining a court order authorizing the interception of wire, oral, or electronic communications requires the Government to apply for an order to "a judge of competent jurisdiction."  Id. § 2518(1).  Among the multiple items of information that must be supplied in the application are details of the offense under investigation, details of the nature and location of the "facilities from which or the place where the communication is to be intercepted," details of the "type of communications sought," the identity of the person targeted by the interception activity, and "a full and complete statement" as to what other "investigative procedures" were "tried and failed" and, if other less invasive procedures have not been tried, a statement as to why they are considered "unlikely to succeed" or "too dangerous."  Id. § 2518(1)(b), (c).

The Government's application is made ex parte and the judge "may enter an ex parte order, as requested or as modified, authorizing or approving interception" if the judge finds probable cause to believe that the target person "is committing, has committed, or is about to commit" one or more specific offenses identified in Title III;  probable cause to believe that "particular communications concerning that offense will be obtained";  a reasonable basis to conclude that "normal investigative procedures have been tried and have failed or . . . appear to be unlikely to succeed or . . . too dangerous," if tried;  and probable cause to believe that the "facilities" and/or place "are being used, or are about to be used, in connection with the commission of such offense, or are leased to, listed in the name of, or commonly used by such person."  Id. § 2518(3).  The judge's order must be specific and restrict the authorization to

---

[2] An exception to judicial pre-authorization exists for certain emergency situations, not applicable here. 18 U.S.C. § 2518(7).

intercept to, among other things, a specific person, if known, specific facilities and/or place, the type of communications to be intercepted, the offense to which the communications relate, and the period of time in which interception is authorized. Id. § 2518(4). As for duration, no order may authorize or approve interceptions "for any period longer than is necessary to achieve the objective of the authorization, nor in any event longer than thirty days," subject however to applications for extensions based on additional showings along the lines of what is required of an initial application. Id. § 2518(5). All orders and extensions "shall contain a provision that the authorization to intercept shall be executed as soon as practicable, shall be conducted in such a way as to minimize the interception of communications not otherwise subject to interception . . ., and must terminate upon attainment of the authorized objective, or in any event in thirty days."
Id.

"[I]n the event the application is granted, Title III provides numerous grounds upon which communications obtained pursuant to a Title III warrant may be suppressed in any proceeding." United States v. Lopez, 300 F.3d 46, 52 (1st Cir. 2002). Thus:

> Any aggrieved person in any trial, hearing, or proceeding in or before any court, department, officer, agency, regulatory body, or other authority of the United States, a State, or a political subdivision thereof, may move to suppress the contents of any wire or oral communication intercepted pursuant to this chapter, or evidence derived therefrom, on the grounds that—(i) the communication was unlawfully intercepted; (ii) the order of authorization or approval under which it was intercepted is insufficient on its face; or (iii) the interception was not made in conformity with the order of authorization or approval.

Id. § 2518(10)(a).

## BACKGROUND

The Court issued intercept orders against four mobile phones used by co-Defendant Barry Diaz. These orders span a time period between mid-April 2011 and Diaz's arrest in early August 2011. The Orders, applications, reports, and related exhibits are docketed in paper as sealed

miscellaneous cases 1:11-mc-78-JAW (mobile telephones 1 and 2), 1:11-mc-105-JAW (same), 1:11-mc-145 (mobile telephone 3), and 1:11-mc-146 (mobile telephone 4).

### A. *The initial application and order (1:11-MC-78-JAW)*

The initial application sought authorization to intercept the telephone conversations and text messages of Barry Diaz and seven other "target subjects" relayed through one specific mobile telephone subscribed to by Diaz, concerning offenses involving the distribution of (and possession with intent to distribute) controlled substances, the use of wire facilities to effectuate the same, and money laundering offenses (including conspiracy). Defendant/Movant Razo was not named as one of the target subjects but became a target subject in later applications.

The DEA Task Force Agent's affidavit in support of the application contains a lengthy investigation overview that supplies more than ample probable cause of drug trafficking based on criminal background information, reports and recordings made by confidential sources, controlled purchases, physical surveillance, and pen register and cell site location data. It depicts Diaz (California native and Connecticut resident) as the leader of a distribution network in the greater-Augusta area and explains that a primary focus of the investigation was to identify Diaz's sources of supply from outside the State of Maine.

*REDACTED*

The affidavit includes a "necessity and exhaustion" section. In it the affiant explains that despite the wide-ranging investigative resources used to date to develop the probable cause showing, the Government still did not have the evidence needed to understand the entire scope of the conspiracy, in particular in relation to sources of supply. The affiant proposed that interception of wire and electronic communications was the only means reasonably likely to secure the information needed to determine, among other things, the organization's sources of

supply, its concealment and distribution methods, and its utilization of cash proceeds.

*REDACTED*

The Court granted the application on April 15, 2011, authorizing a 30-day period in which agents could intercept Diaz's wire and electronic communications. On April 29, 2011, the Government filed a progress report.

*REDACTED*

B.     *Second application and orders (1:11-MC-00078-JAW; 1:11-MC-00105-JAW)*

On May 12, 2011, the Government applied for another intercept order. In the application the Government sought continued monitoring of target telephone 1 and new monitoring for target telephone 2.

*REDACTED*

On May 12, 2011, the Court issued two intercept orders, one for each of the target mobile phones. As to the first mobile phone, the order authorized continued interception. (1:11-MC-00078-JAW.) The Court separately docketed the application papers and the intercept order for the second mobile phone (1:11-MC-00105-JAW) though it is necessary to review both dockets as many of the filings pertain to both phones and are not reproduced in both case files.

The Government filed a report on May 26, 2011.

*REDACTED*

C.     *Continuation of interception*

The Government sought authorization for continued interception on June 10, 2011, which the Court granted that day. The Court authorized continued interception over both telephones. (1:11-MC-00105-JAW.) The underlying application included an updated affidavit reciting

ample probable cause to support an intercept order targeting the identified mobile phones. (1:11-MC-00078-JAW.)³

*REDACTED*

The Government next filed a report on June 10, 2011, followed by another report on June 24, 2011. (1:11-MC-00078-JAW.)

*REDACTED*

D.  *New application (1:11-MC-00145-JAW; 1:11-MC-00146-JAW)*

On July 1, 2011, the Government applied for a new intercept order targeting two recently activated mobile phones believed to be in Diaz's possession and used by him in furtherance of drug trafficking and related criminal activity. The Court issued its intercept order on even date, finding both probable cause and a sufficient showing that normal investigative techniques have been tried, had either failed or had limited success, and were not reasonably likely to succeed or were too dangerous to attempt on their own.

*REDACTED*

The Government filed its final application for continuation of the intercept order on July 29, 2011. The Court granted the application on even date.

*REDACTED*

The Government's response in opposition to Defendant Razo's motion to suppress states that interceptions over mobile phones 3 and 4 ceased on August 6, 2011, following the arrest of Diaz.

---

³ I cite the docket numbers to facilitate review of the paper files. The citation is a reference to the paper case file in which I found the filing in question. At present, not every order and application is reproduced in the paper files associated with 11-MC-00078 and 11-MC-00105. I am not suggesting that they need be, only identifying where I found the materials in question.

**DISCUSSION**

Defendant Razo contends that any communications intercepted by the Government to support its case against him must be suppressed because the Government did not make a sufficient showing in its applications for the intercept orders that less intrusive procedures were tried and failed or would have been unlikely to succeed if tried. (Mot. to Suppress Wire Intercepts at 1, ECF No. 57.) The requirement that the Government demonstrate the nonutility of other investigative procedures before resorting to surreptitious intercepts is commonly described as the "necessity requirement." Lopez, 300 F.3d at 52. The requirement is "simply designed to assure that wiretapping is not resorted to in situations where traditional investigative techniques would suffice to expose the crime." United States v. Kahn, 415 U.S. 143, 153 n.12 (1974). To demonstrate the need for an intercept order, "the government must demonstrate that it has made 'a reasonable, good faith effort to run the gamut of normal investigative procedures before resorting to means so intrusive as electronic interception of telephone calls." Lopez, 300 F.3d at 52 (quoting United States v. Hoffman, 832 F.2d 1299, 1306-307 (1st Cir. 1987)). The requirement is only a rule of reason; it does not demand that investigators "exhaust all other conceivable investigative procedures," United States v. Edwards, 69 F.3d 419, 429 (10th Cir. 1995), let alone "run outlandish risks," Hoffman, 832 F.2d 1306; only that there be a reasonable basis for the issuing court to conclude "that normal investigatory procedures reasonably appear[] unlikely to succeed." United States v. Ashley, 876 F.2d 1069, 1074 (1st Cir. 1989). See also Lopez, 300 F.3d at 52-53 (citing and quoting Ashley, Hoffman, and Edwards).

When reviewing the propriety of intercept orders in the context of a motion to suppress evidence, the reviewing court's task is to make a "practical and commonsense" assessment whether the facts set forth in the Government's application "are minimally adequate to support

the findings made by the issuing judge." United States v. Rivera-Rosario, 300 F.3d 1, 19 n.23 (1st Cir. 2002) (internal quotation marks omitted). The movant is only entitled to a hearing on the adequacy of the Government's necessity showing if the movant demonstrates that the showing depends on false statements that would otherwise support a Franks hearing. Id. at 20. Thus, the movant must make a "substantial preliminary showing" that an affidavit in support of an application contains false statements or material omissions, made knowingly and intentionally, or with reckless disregard for the truth, and that the statements or omissions were necessary to support the required findings. Id. at 20 (quoting Franks v. Delaware, 438 U.S. 154, 154-56 (1978)).

      Defendant Razo does not contend that the affidavits in support of the applications were supported by any false statements or material omissions. Thus, there is no basis for the Court to hold a hearing on the motion. Razo summarizes the affiant's representations related to the necessity requirement, offers that the affiant would have had an "incredible wealth of information, far more than just 'probable cause,'" made available by the Government's use of conventional techniques including confidential sources, surveillance, pen register data, cell-site locator data, and stored electronic communications, and contends that it was overreaching for the Government to claim that "necessity require[d] the use of wiretaps to obtain the identity of co-conspirators and 'real-time' information about the drug conspiracy." (Mot. to Suppress Wire Intercepts at 6.) From there, Razo summarizes some of the content of the affidavits in support of the several applications and requests for continuation. According to Razo, the representations reflect a case that is not complex involving "allegations of a modest conspiracy," without charges of a continuing criminal enterprise, racketeering, or money laundering (id. at 7) and only "common" drugs (id. at 8). Razo suggests that an intercept order is simply not called for in this

kind of case, especially when the head of the alleged organization, Diaz, and several of his distributors could have been apprehended and charged (in Razo's view) without intercepting communications. (Id. at 8-9.) Razo discusses each of the alternative means available to the Government to collect data, all of which is also discussed in the Government's supporting affidavits (confidential sources, interviews of shipping services, fingerprint analysis, cell-phone records, pen registers, grand jury subpoenas, pole cameras, trash searches, infiltration attempts, conventional search warrants, controlled buys, tracking devices, surveillance). In Razo's view, all of these techniques, if well employed, would have developed sufficient information to provide probable cause and determine the scope of the alleged conspiracy. (Id. at 14.) Razo also complains that the subsequent intercept orders and extension orders were not called for, even if the initial intercept order was. (Id.)

The Government sees it otherwise. It observes that its objective was "to identify Barry Diaz's source(s) of supply for . . . illegal drugs and to dismantle, charge, and convict the entire network of individuals . . . who supply drugs to, and receive drugs from, Barry Diaz," not merely to obtain probable cause to arrest the conspirators known to it as of April 15, the date of the first application. (Gov't Response at 5, ECF No. 64.) The Government references the Task Force Agent's affidavits and asserts that the Agent reasonably explained the shortcomings of relying exclusively on traditional investigative tools to discover the scope and character of Diaz's sources. (Id. at 6.)

The Government clearly has the better of this argument, particularly in the context of a second-stage review of the Court's earlier decision to issue the intercept orders and related extensions. The Government's applications and supporting affidavits and exhibits were far more than "minimally adequate to support the findings made by the issuing judge." Rivera-Rosario,

300 F.3d at 19 n.23. The traditional investigative tools used by the Government essentially revealed that intercept orders would be the most logical means of proceeding with the investigation. The Government was not required to settle for a limited investigation targeting only Diaz and his Maine distributors. The Government had probable cause to believe that Diaz had one or more sources of supply outside of the state and reason to believe that traditional methods of investigation were not reasonably equal to the task of netting anything more than couriers. Even with respect to the task of seizing shipments of drugs made by couriers, such as the Iowa methamphetamine shipment, it is questionable that this could have been achieved without the use of wire intercepts.

The Task Force Agent reasonably attested that confidential sources and potential informants were not likely to be able to gain intelligence about Diaz's sources of supply; that shipping invoices and packages were not likely to expose anyone other than possibly a courier; that heavy reliance on search warrants or grand jury witness subpoenas could expose the broader investigation and prevent agents from learning about Diaz's sources of supply; that surveillance and non-intercept phone data, though useful, would not suffice to expose sources of supply, the nature and timing of drug shipments, or the persons involved; and that the combination of these and other methods would not be sufficient to divulge the identity of those individuals positioned upstream from Diaz, the kinds and quantities of contraband drugs they were able to source, and their means of delivering drugs to and receiving payment from Diaz. Moreover, a longitudinal review of the intercept orders and continuation orders reflects a gradually developing investigation with no precipitating event that would have made it unreasonable for interception to continue with respect to Diaz's initial two phones or his second two phones.

## CONCLUSION

Based on a thorough review of the Government's applications for intercept orders and continuation orders, supporting affidavits and reports, and related exhibits, there clearly existed reasonable support for the Government's assertion, and the Court's finding, that intercept orders were an appropriate and necessary tool for the development of the investigation to achieve appropriate law enforcement objectives. Accordingly, I recommend that the Court deny Razo's Motion to Suppress Wire Intercepts (ECF No. 57).

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, and request for oral argument before the district judge, if any is sought, within fourteen (14) days of being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

October 4, 2012