UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 1:11-cr-00184-JAW |
| | ) | |
| MARK RAZO | ) | |
| and | ) | |
| BARRY DIAZ | ) | |

**ORDER ON DEFENDANT'S MOTION TO SEVER, OR ALTERNATIVELY, MOTION FOR RELEASE**

The Court dismisses without prejudice a pretrial Defendant's motion to sever or motion for release.

I.   **STATEMENT OF FACTS**

On October 20, 2011, a federal grand jury indicted Mark Razo for unlawful use of a communication facility, an alleged violation of 21 U.S.C. § 843(b). *Indictment* (ECF No. 1). Mr. Razo was arrested in the Eastern District of California and on November 8, 2011, was ordered detained by a United States Magistrate Judge in the District of California. *See Rule 5(c)(3) Documents* Attach. 1, *Criminal Docket for Case #: 2:11-mj-00343-DAD-1*, at 2 (ECF No. 11-1); Attach. 2, *Detention Order* (ECF No. 11-2) (*Detention Order*). On December 13, 2011, Mr. Razo made his first appearance before a Magistrate Judge in the District of Maine and the California detention order was continued. *Minute Entry* (ECF No. 14). On March 15, 2012, a federal grand jury issued a superseding indictment, expanding the number of unlawful communications counts to three, adding a drug trafficking

conspiracy count, and including a forfeiture allegation. *Superseding Indictment* (ECF No. 24).

On April 19, 2012, a federal grand jury issued a second superseding indictment, this time adding a new defendant, Barry Diaz, alleging that Mr. Razo and Mr. Diaz were involved in two of the three unlawful use of a communication facility charges, alleging that Mr. Diaz conspired with Mr. Razo to distribute cocaine, marijuana, and methamphetamine, and claiming a forfeiture against both Mr. Diaz and Mr. Razo. *Second Superseding Indictment* (ECF No. 32).

Trial has been delayed by a series of motions to continue, filed almost exclusively by the Defendants. *See Jt. Mot. to Extend Deadline to Provide Disc. and File Dispositive Mots.* (ECF No. 19); *Def.'s Mot. to Enlarge the Time Within Which to File Pre-Trial Mots. and Continue Jury Trial* (ECF No. 28); *Def.'s Mot. to Enlarge the Time Within Which to File Pre-Trial Mots. and Continue Jury Trial* (ECF No. 39); *Def.'s Am. Mot. for Continuance of Trial and for Filing of Pretrial Mots.* (ECF No. 48). When the Court granted the May 2012 motion to continue, it set a firm trial date for September 2012, setting jury selection for September 4, 2012, and noting that trial would commence immediately following jury selection. *Notice of Hr'g* (ECF No. 52).

The Court's efforts to move the case to trial in September were stymied by counsels' filing of motions in July, which when combined with a motion to extend the filing deadlines, forced a continuance of the September trial date because the Court could not as a practical matter resolve the pretrial motions before September

4, 2012. *See Def.'s <u>Am.</u> Mot. to Extend Deadline for Filing of Pretrial Mots.* (ECF No. 54); *Def.'s Mot. to Dismiss Based on Improper Venue* (ECF No. 56); *Def.'s Mot. to Suppress Wire Intercepts* (ECF No. 57); *Mot. to Dismiss for Improper Venue* (ECF No. 60); *Def.'s Mot. to Transfer Venue for Trial* (ECF No. 61). On July 27, 2012, the Court reluctantly continued the case to November 2012 with jury selection set for November 7 and trial to follow immediately thereafter. *Notice of Hr'g* (ECF No. 62).

As the November trial date loomed, the Court held a hearing with Mr. Diaz on October 23, 2012, and following that hearing, on October 29, 2012, Mr. Diaz moved for a competency evaluation. *Minute Entry* (ECF No. 107); *Def.'s Mot. to Determine Competency* (ECF No. 111); *Def.'s Am. Mot. to Determine Competency* (ECF No. 112). On the same day, the Court granted the motion to determine competency; to expedite the matter, the Court ordered that the evaluation take place with a local clinical psychologist. *Order* (ECF No. 115). The Court also removed the case from the November trial list and indicated that the matter would be rescheduled after Mr. Diaz's competency hearing. *Notice* (ECF No. 116).

Upon learning that the case had been removed from the November trial list, Mr. Razo quickly objected and moved to sever his case from Mr. Diaz's case or alternatively for pretrial release. *Def.'s Mot. to Sever, or Alternatively, Mot. for Release* (ECF No. 118) (*Razo Mot.*). The Government responded on October 30, 2012. *Gov't's Opp'n to Def.'s Mot. to Sever* (ECF No. 119) (*Gov't's Opp'n*). Mr. Razo has indicted he will not file a reply.

## II.	THE PARTIES' POSITIONS

### A.	Mark Razo's Position

Noting that the Court sua sponte removed the case from the November 2012 trial list, Mr. Razo says that he has been "prejudiced by this delay." *Razo Mot.* at 2. His first complaint is his continued detention pending trial. *Id.* He notes that he is "not from Maine, has no ties to Maine, and aside from his incarceration, knows nobody but undersigned counsel in Maine. His family is in California, his state of residence." *Id.* He notes that he "has been patiently awaiting trial here in Maine." *Id.*

Mr. Razo next says that the continuance of the trial has disrupted his trial preparation. *Id.* He observes that he "has been arranging witnesses and trial strategy and looking forward to a resolution of the case, one way or another." *Id.* He says that members of his family have purchased expensive air tickets from California to Maine to attend the trial. *Id.* He notes that he "has caused inmates from California Department of Corrections facilities to be removed from their penal facility and subjected to transportation by US Marshal[s] for appearance and testimony at his November trial." *Id.*

Mr. Razo also objects to the indefinite nature of the delay. *Id.* Although the Order for competency evaluation requires a report within thirty days, he says that "any number of reasons could affect the timing and issuance of the report" and complains that "there is no indication when the Court will conduct its competence

4

hearing." *Id.* He observes that if Mr. Diaz is found incompetent, there would be "further delays while his competence is subject to the restoration process." *Id.*

Mr. Razo maintains that it is "unfair and prejudicial to require that [he] remain incarcerated as a presumptively innocent pretrial detainee pending the outcome of an evaluation process that could engender months delay." *Id.* He asks the Court to sever his trial and proceed as scheduled in November. *Id.* He claims that as the Government has been preparing for trial, it should suffer no prejudice from proceeding against him in November. *Id.* at 2-3.

If the Court rejects the motion to sever, Mr. Razo asks to be released pending trial. *Id.* at 3. He notes that he has been detained in Cumberland County, which has made trial preparation with the Bangor defense counsel more difficult. *Id.* If released, he says, he could have more convenient access to his defense lawyer and would be able to review discovery. *Id.* He suggests that pretrial release conditions such as travel restrictions, electronic monitoring and the like, would be appropriate to "accomplish the purposes of § 3142." *Id.*

### B. The Government's Opposition

The Government first responds to Mr. Razo's concern about undue and indefinite delay. *Gov't's Opp'n* at 1. It notes that under the Order, the local psychologist's report is due by December 3, 2012, and that this should result in a more expedient resolution of the issue than if an evaluation were conducted at a Bureau of Prisons facility. *Id.* It contends that the case should be ready for joint trial by January 2013. *Id.*

Responding to Mr. Razo's complaint of incarceration during a period of undue delay, the Government asserts that "a substantial portion of this delay is due to motions to continue filed by one or both defendants or the pendency of the defendants' substantive motions." *Id.* at 2. The Government disagrees with Mr. Razo's assessment that a November trial of him alone would not prejudice the Government. *Id.* at 2-3. It lists five concerns: (1) that the Court would have to try the same case twice; (2) that two sets of jurors would be required at increased cost and inconvenience; (3) that the Government anticipates calling approximately thirty witnesses over a case-in-chief lasting four to six days; (4) that the Government intends on flying in lay and expert witnesses from around the Country at significant expense, which would effectively double if there were separate trials; and (5) that the Government expects to introduce about forty-five intercepted wiretap calls between Mr. Razo and Mr. Diaz as well as dozens of text messages. *Id.* at 3. The Government wishes to avoid "trying this matter twice—and likely twice within two months." *Id.* Finally, the Government says that if there is a substantial delay from Mr. Diaz's competency issues, Mr. Razo could move for severance in the future. *Id.* at 4.

## III.  DISCUSSION

### A.  Motion to Sever

Federal Rule of Criminal Procedure 14 provides in part that "[i]f the joinder of offenses or defendants . . . for trial appears to prejudice a defendant . . . the court may . . . sever the defendants' trials, or provide any other relief that justice

requires." FED. R. CRIM. P. 14(a). The First Circuit law regarding severance is clear:

> As a rule, persons who are indicted together should be tried together. This practice helps both to prevent inconsistent verdicts and to conserve resources (judicial and prosecutorial). Thus, when multiple defendants are named in a single indictment, a defendant who seeks a separate trial can ordinarily succeed in obtaining one only by making a strong showing of evident prejudice. The hurdle is intentionally high; recent Supreme Court precedent instructs that "a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence."

*United States v. O'Bryant*, 998 F.2d 21, 25 (1st Cir. 1993) (quoting *Zafiro v. United States*, 506 U.S. 534, 539 (1993)) (internal citations omitted). Moreover, in the context of a conspiracy, the First Circuit has observed that "severance will rarely, if ever, be required." *United States v. Brandon*, 17 F.3d 409, 440 (1st Cir. 1994) (quoting *United States v. Searing*, 984, F.2d 960, 965 (8th Cir. 1993)). To succeed on a motion for severance, a defendant must show that joinder would deprive him "of a fair trial, resulting in a miscarriage of justice." *United States v. Soto-Beniquez*, 356 F.3d 1, 29 (1st Cir. 2003) (citing *United States v. Baltas*, 236 F.3d 27, 33 (1st Cir. 2001)).

Mr. Razo has not asserted any of the traditional bases for severance, such as evidentiary issues, spill-over impacts, or *Bruton v. United States*, 391 U.S. 123 (1968), concerns. *See Zafiro*, 506 U.S. at 539. Instead, Mr. Razo's main argument is his right to a speedy trial. Of course, his concern would have greater resonance if he had not repeatedly moved to continue the case or filed motions that had the same

7

effect or if this case were in danger of violating the time limits of the Speedy Trial Act. It is noteworthy that this is the first time Mr. Razo's case has been continued without his acquiescence.

Moreover, his concerns about trial preparation, witness relocation, and family expenditures, although certainly legitimate, are a typical consequence of criminal trial lists, where parties may prepare for a trial that is continued for a variety of legitimate reasons. Here, the need for a competency evaluation was unanticipated until October 25, 2012, and the Court's continuance of the case to assure the competency of a co-defendant reflects its determination to accord both Mr. Razo and Mr. Diaz a fair trial. Furthermore, the Government has presented a significant justification for a joint trial in view of the anticipated length of trial, the number and location of the witnesses, and the need to avoid unnecessary expense. In short, the Court is not convinced that a single continuance justifies the requested severance.

Mr. Razo's concern about the indefinite nature of the delay is another matter. As of now, the delay involves only a period of thirty days, but the Court agrees with Mr. Razo's point that competency matters are inherently unpredictable and can drag on. If it turns out that the trial is significantly delayed by the resolution of the pending competency issue, the Court invites Mr. Razo to ask the Court to revisit the issue. The Court is dismissing his motion without prejudice so that, if necessary, he may reinitiate it without this Order imposing a preclusive effect on a later-filed motion.

### B.     Pretrial Release

In his motion, Mr. Razo suggests that if the Court denies his motion to sever, it should release him from incarceration because he has been in jail a long time and his ability to assist in his defense has been hampered by his incarceration. *Razo Mot.* at 3. Here, he is mixing apples and oranges.

The standard for pretrial release is statutory. On November 8, 2011, the Magistrate Judge in California held a detention hearing pursuant to 18 U.S.C. § 3142(f) and concluded that Mr. Razo must be detained. *Detention Order* at 1-2. The Magistrate Judge found "[b]y a preponderance of the evidence that no condition or combination of conditions will reasonably assure the appearance of the defendant as required." *Id.* at 1. The Magistrate Judge cited the nature of the alleged crime, the absence of any known family or community ties, the lack of known steady employment, a past conviction for evading a police officer, and the Defendant's significant prior criminal record. *Id.* Furthermore, although not verified, the Magistrate Judge noted that he was on parole at the time of his arrest. *Id.* at 2.

If Mr. Razo is asking the Court to revisit that decision, he has failed to provide the Court with any evidence under § 3142(g) that would occasion a reevaluation. Section 3142(g) sets forth the factors the Court must consider in determining whether to release a defendant, including whether the crime charged is a controlled substance offense, the weight of the evidence against the person, the person's history and characteristics—his character, physical and mental condition, family ties, employment, financial resources, length of residence in the community,

9

community ties, past conduct, history of alcohol and drug abuse, criminal history, record of appearing in court, and whether he was on probation or parole at the time of the alleged crime or his arrest—and the nature and seriousness of the danger to any person or the community posed by his release. Mr. Razo has not provided the Court with sufficient information on these factors for the Court to authorize his release.

Although he does not cite it, Mr. Razo may be seeking release under § 3142(i), which allows a judicial officer to revisit a prior order of detention and to temporarily release a defendant "to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason." 18 U.S.C. § 3142(i). However, in his motion, Mr. Razo has merely made a blanket assertion that his current incarceration is inconvenient and it would be easier for him to meet with his attorney and review documents if he were released. *Razo Mot.* at 3. Of course, most defendants who are incarcerated pretrial could say the same thing. The Court concludes that the assertions in his motion fail to meet the statutory standard of necessity or otherwise present a compelling reason for release.

The Court therefore dismisses his motion for release without prejudice. If Mr. Razo wishes to re-file his motion for release, request a § 3142(f) hearing, and present the Court with evidence that would cause a reassessment of the November 8, 2011 detention order, he is free to do so, and in particular, if Mr. Razo wishes to

more formally assert his contentions about lack of access to his defense counsel, he is also free to bring this matter to the attention of the Court by motion.

## IV. CONCLUSION

The Court DISMISSES without prejudice Defendant's Motion to Sever, or Alternatively, Motion for Release (ECF No. 118).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
CHIEF UNITED STATES DISTRICT JUDGE

Dated this 1st day of November, 2012