UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 1:11-cr-00184-JAW |
| | ) | |
| MARK RAZO | ) | |
| and | ) | |
| BARRY DIAZ | ) | |

**ORDER ON MOTIONS IN LIMINE**

In anticipation of trial in this drug trafficking conspiracy case, the parties filed six motions in limine.  In this Order, the Court addresses each, offering some guidance but dismissing most without prejudice because admissibility depends upon the trial context.

The Government has filed two motions in limine. The Court dismisses without prejudice the Government's first motion, which concerns wiretap evidence of uncharged criminal acts, because it cannot make a definitive ruling outside the trial context.  The Court grants the Government's second motion, which concerns whether it may introduce evidence that during the period charged in the conspiracy, Mr. Razo was incarcerated in state prison in California.

Mark Razo has filed four motions in limine.  The Court dismisses Mr. Razo's first motion without prejudice because the Government has represented that it does not intend to seek to introduce the evidence that is the subject of the motion.  The Court denies Mr. Razo's second motion, which seeks to exclude as expert testimony a law enforcement agent's proposed testimony about the quantity of drugs

consistent with drug trafficking, the tools of the drug trade, the transportation of drugs, and the interpretation of code words on wiretap transcripts, because under First Circuit law, such testimony is not expert testimony.  The Court dismisses without prejudice Mr. Razo's third motion in limine, which addresses the admissibility of his prior convictions, pre- and post-conspiracy acts, alleged actions of co-conspirators, actions outside the District of Maine, the use of aliases, and evidence of financial transactions, because there is an insufficient factual and contextual basis for the Court to rule on the issues presented in the motion.  The Court dismisses without prejudice Mr. Razo's fourth motion in limine, which asserts a variety of challenges to thirteen wiretapped phone calls between Mr. Diaz and persons other than Mr. Razo, because it cannot rule definitively on Mr. Razo's objections until it reviews the content of those calls in the context of trial.

## I.   GOVERNMENT'S MOTION IN LIMINE REGARDING A MAY 3, 2011 DRUG SHIPMENT, AND A MAY 6, 2011 DRUG SEIZURE

On October 5, 2012, the Government filed two motions in limine in this drug trafficking conspiracy case.  *Gov't's First Mot. in Limine* (ECF No. 76) (*Gov't's First Mot.*); *Gov't's Second Mot. in Limine* (ECF No. 77) (*Gov't's Second Mot.*).

### A.   The Government's Position

The Government's first motion focuses on wiretap evidence that "in the second half of April 2011 and early May 2011, Defendants Diaz and Razo negotiated for a cocaine transaction."  *Gov't's First Mot.* at 1.  Ultimately, however, Mr. Razo was unable to obtain the desired drugs and Mr. Diaz obtained them from a different source.  *Id.*   The Government says it "expects to offer wire and electronic

interceptions where Diaz advised Razo that he found drugs from a different source and purchased approximately a half kilogram of cocaine." *Id.* The Government claims that, in early May 2011, the drugs were shipped from California to Connecticut in two separate packages: the first was ultimately delivered to Maine on about May 3, 2011, and the second to Stamford, Connecticut, on May 6, 2011. *Id.* The second package was seized by Drug Enforcement Agency (DEA) agents and was found to contain cocaine and oxycodone. *Id.* According to the Government, "[h]ours after this seizure, Diaz and Razo discussed what happened and why law enforcement might have targeted the package" and they "discussed shipping methods and the loss of profit." *Id.* at 2.

The Government claims that evidence of these incidents is admissible, even though they involved uncharged conduct, because such evidence demonstrates "the nature of the relationship between Diaz and Razo" and puts into "proper context their drug-related negotiations in April 2011 and early May 2011." *Id.* at 2. Even though the Government concedes the evidence is prejudicial, it asserts the evidence is not unfairly so and is highly probative. *Id.* at 2-3.

### B.   The Defendants' Opposition

Messrs. Diaz and Razo object to the admission of this evidence. *Def.'s Objection to the Gov't's Mots. in Limine*, 1-2 (ECF No. 92) (*Diaz Opp'n*); *Def.'s Resp. to Gov't's First Mot. in Limine* (ECF No. 96) (*Razo First Opp'n*). Mr. Diaz emphasizes the prejudicial effect of evidence that he engaged in uncharged drug trafficking. *Diaz Opp'n* at 2. He says that the evidence would not only be unfairly

prejudicial, but also would be of limited probative value because it involved a transaction that the Government concedes Mr. Razo was not ultimately involved in. *Id.* He suggests that, at a minimum, before the evidence is heard by a jury, the Government should be required to make an offer of proof. *Id.*

Mr. Razo points out that this evidence demonstrates that Mr. Diaz "was engaged in a separate and distinct conspiracy which is unrelated to the conspiracy charged by the Government between Razo & Diaz." *Razo First Opp'n* at 1. Mr. Razo suggests that the Government does not need to introduce evidence of these shipments and seizure to demonstrate the relationship between Mr. Diaz and himself because the Government could do so by introducing evidence of their taped conversations alone. *Id.* at 1-2. He further observes that as the uncharged drug seizure involved oxycodone, and as Mr. Razo has been indicted for distribution of cocaine, methamphetamine, heroin, and marijuana, the admission of evidence of this additional drug would unfairly prejudice Mr. Razo. *Id.* at 2; *see Second Superseding Indictment* at 2 (ECF No. 32).

### C.   Discussion

Rules 403 and 404(b) control the admissibility of evidence of uncharged acts. FED. R. EVID. 403, 404(b). The First Circuit has observed that "the admission of Rule 404(b) evidence is committed to the sound discretion of the trial judge." *United States v. Manning*, 79 F.3d 212, 217 (1st Cir. 1996); *see also United States v. Ofray-Campos*, 534 F.3d 1, 35 (1st Cir. 2008). The First Circuit has repeatedly held that in a conspiracy case, "evidence of other bad acts . . . can be admitted to explain the

background, formation, and development of the illegal relationship, and, more specifically, to help the jury understand the basis for the co-conspirators' relationship of mutual trust." *United States v. Green*, 698 F.3d 48, 55 (1st Cir. 2012) (quoting *United States v. Escobar-de Jesus*, 187 F.3d 148, 169 (1st Cir. 1999)); *see also United States v. Pelletier*, 666 F.3d 1, 3-6 (1st Cir. 2011); *United States v. Manning*, 79 F.3d 212, 217 (1st Cir. 1996) (cross-examination about prior drug dealing permissible as to defendant's knowledge and intent); *United States v. Garcia*, 983 F.2d 1160, 1173 (1st Cir. 1993) (affirming admission of evidence of a defendant's prior arrest for dealing cocaine as relevant to intent and knowledge).

Of course, the admissibility of such evidence may depend upon the nature of the defense.  In *United States v. Hadfield*, 918 F.2d 987 (1st Cir. 1990), the First Circuit upheld the admission of prior convictions for narcotics trafficking because the defendant's "main defense was grounded on the idea that she was a homemaker and floral shop employee who played no part in her husband's marijuana business." *Id.* at 994.

Furthermore, the trial court must engage in the familiar two-step analysis for determining the admissibility of prior bad acts evidence.  *See United States v. Gentles*, 619 F.3d 75, 86 (1st Cir. 2010); *Garcia*, 983 F.3d at 1172.  The court must first determine whether the evidence has some "special relevance" to an issue in the case—such as intent, preparation, knowledge, plan, absence of mistake, or identity—and the court must then balance the probative value against the danger of unfair prejudice under Rule 403.  *Gentles*, 619 F.3d at 86.

Based on First Circuit precedent, it appears likely that the evidence that the Government seeks to introduce will be deemed admissible.   However, its admissibility and scope may be subject to further refinement depending on developments at trial.  The Court therefore dismisses the Government's first motion in limine without prejudice.

## II.    GOVERNMENT'S MOTION IN LIMINE REGARDING MARK RAZO'S WHEREABOUTS DURING THE ALLEGED CONSPIRACY

In its second motion in limine, the Government seeks a ruling that it may reveal to the jury the fact that Mark Razo was incarcerated in California State Prison during his wiretapped discussions with Barry Diaz.  *Gov't's Second Mot.* at 1. Both Mr. Diaz and Mr. Razo concede that Mr. Razo's presence in prison may become relevant during trial.  *Diaz Opp'n* at 3; *Def.'s Resp. to Gov't Second Mot. in Limine*, 1 (ECF No. 97)  (*Razo Second Opp'n*) ("The Defendant does not object to this fact being elicited").  Mr. Razo suggests that the Court should give the jury a limiting instruction to the effect that the jury may not infer from his location or incarceration any evidence of guilt of the pending charges.  *Razo Second Opp'n* at 1. If counsel wishes such an instruction, the Court expects counsel to present proposed language to the Court.  *See Pelletier*, 666 F.3d at 6.

After conceding that evidence of Mr. Razo's whereabouts is relevant, Mr. Diaz attempts to hedge his bet.  He asks the Court to "examine whether the unfair prejudice associated with the evidence overwhelms its probative value."  *Diaz Opp'n* at 3.  He "reserves the right to object to the admission of this evidence and requests that the Government be required to make an offer of proof outside of the presence of

6

the jury before publishing evidence of Mr. Razo's whereabouts." *Id.* Then, "[d]epending on the circumstances, it is possible that the Defendant would stipulate to Mr. Razo's whereabouts so as to avoid any issues concerning this evidence." *Id.*

The Court overrules Mr. Diaz's objection.  As Mr. Diaz acknowledges, the whereabouts of one of the co-defendants during the alleged conspiracy is obviously relevant to the nature and scope of the conspiracy and the roles each Defendant supposedly assumed.  In his motion to transfer venue, Mr. Diaz represented that he and Mr. Razo intend to call "several Californian witnesses whose testimony will demonstrate that while incarcerated, Razo could not and did not participate in a conspiracy to distribute drugs." *Def.'s Mot. to Transfer Venue*, 4 (ECF No. 61).  As the Defendants apparently intend to make Mr. Razo's incarceration a defense, there would be no basis to prevent the Government from introducing this evidence. Furthermore, the Court has indicated a willingness to give a cautionary instruction to the jury about the use of this evidence.  Finally, the effect of Mr. Diaz's equivocation is to prevent the Government from mentioning Mr. Razo's incarceration during its opening and to force the Government to approach the Court before introducing this evidence.  In view of Mr. Razo's agreement that the fact of his incarceration may be admitted, Mr. Diaz's concession that the fact of Mr. Razo's incarceration is relevant, and the availability of a cautionary instruction, the Court overrules Mr. Diaz's objection and grants the Government's Second Motion in Limine.

III.   **MARK RAZO'S MOTION IN LIMINE REGARDING RECORDED CONVERSATIONS BETWEEN A STATE OF CALIFORNIA CORRECTIONS OFFICER AND MARK RAZO**

On October 19, 2012, Mark Razo moved in limine to exclude recordings of conversations between a California corrections officer and himself. *Def.'s First Mot. in Limine* (ECF No. 93). The Government responded on October 29, 2012 that it does not intend to present this evidence at Mr. Razo's trial, and requested that the Court deem the motion moot. *Gov't's Resp. to Def. Razo's First Mot. in Limine* (ECF No. 113).

In light of the Government's representation that it does not intend to present the contested evidence at trial, the Court concludes that a ruling on the merits would constitute an advisory opinion. The Court therefore dismisses Mr. Razo's first motion in limine without prejudice. Mr. Razo is free to raise this same issue in the future should the Government's position change.

IV.   **MARK RAZO'S MOTION IN LIMINE AS TO PROPOSED EXPERT TESTIMONY OF AGENT**

### A.   **Mark Razo's Position**

On October 19, 2012, Mr. Razo moved to exclude the proposed testimony of a law enforcement agent regarding certain aspects of drug trafficking, such as the quantity of drugs inconsistent with personal use, the tools of the drug trade, transportation of drugs, and interpretation of code words within wiretapped conversations. *Def.'s Second Mot. in Limine*, 1 (ECF No. 94) (*Def.'s Second Mot.*). Mr. Razo worries that such testimony, combining lay and expert testimony, will "confuse a jury." *Id.* at 2. Mr. Razo contends that the Court should make a Rule

702 determination of the agent's purported expertise and that the Court should apply a *Kumho Tire* analytic framework to the issue. *Id.*; *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999). Mr. Razo also asserts that a Confrontation Clause issue would be presented if the agent relies—as experts are typically allowed to do—on hearsay. *Id.* at 5-6. Finally, he cautions that if an agent is allowed to testify as a lay witness, he should not be allowed to interpret the obvious. *Id.* at 6.

### B.    The Government's Response

On October 29, 2012, the Government responded by citing *United States v. Valdivia*, 680 F.3d 33 (1st Cir. 2012), which the Government reads as holding that law enforcement testimony of the sort the Government proposes to introduce at trial constitutes lay, not expert testimony. *Gov't's Resp. in Opp'n to Def. Razo's Second Mot. in Limine*, 1-3 (ECF No. 117). However, to the extent the agent's testimony could be construed as expert testimony, the Government contends that the same agent should be allowed to testify both as a lay and expert witness. *Id.* at 3-5.

### C.    Discussion

The "line between expert testimony under Rule 702 and lay opinion testimony under Rule 701 is, in practice, 'not [an] easy [one] to draw.'" *Valdivia*, 680 F.3d at 50 (quoting *United States v. Colón Osorio*, 360 F.3d 48, 52-53 (1st Cir. 2004)). Nevertheless, it is clear in the First Circuit that the type of law enforcement agent testimony in question here may be admitted as lay opinion testimony under Rule 701. Although Mr. Razo cites authority from the Second, Seventh, and Ninth

Circuits for his position, he cites no First Circuit case in support of his position.[1] *Def.'s Second Mot.* at 1-6.

This is because the rule in the First Circuit regarding the admissibility of law enforcement agent testimony differs from that of some other circuits. This split recently came to light in *Valdivia*. In *Valdivia*, the First Circuit addressed the admissibility of the testimony of a law enforcement agent about drug traffickers' common practice of registering their cell phones in the names of third parties to avoid detection. *Valdivia*, 680 F.3d at 49-50. Relying on First Circuit precedent, the First Circuit observed that this testimony required "no scientific or technical expertise within the scope of Rule 702," and rejected the contention that this testimony was expert testimony. *Id.* at 50-51 (citing *United States v. Maher*, 454 F.3d 13, 24 (1st Cir. 2006), and *United States v. Ayala-Pizarro*, 407 F.3d 25, 29 (1st Cir. 2005)). The First Circuit held that the agent's testimony was derived from "'particularized knowledge that [the agent had obtained] by virtue of his . . . position' as a drug enforcement agent tasked with investigating the . . . narcotics ring." *Id.* at 50-51 (quoting FED. R. EVID. 701, Advisory Committee's note). Indeed,

---

[1]     To be more accurate, Mr. Razo cites *United States v. Reynoso*, 336 F.3d 46, 49 (1st Cir. 2003), for the proposition that "[c]ourts have applied *Kumho Tire* to a law enforcement expert witness whose testimony interpreted 'drug trade jargon.'" *Def.'s Second Mot.* at 2. Mr. Razo introduces *Reynoso* with a "cf.," asserting that *Reynoso* supports a proposition different from the main proposition but sufficiently analogous to lend support. THE BLUEBOOK: A UNIFORM SYSTEM OF CITATION at 55 (19th ed. 2010).

         But in *Reynoso*, the First Circuit ruled only that the district court did not abuse its discretion in admitting the "expert testimony" of a Drug Enforcement Administration (DEA) agent that the 110 grams seized from the defendant's motor vehicle was "too large to have been exclusively for his personal use." *Reynoso* at 49. The First Circuit observed that "[d]ue to her DEA experience, Agent Kelleher was competent to testify to the relative raw-weight distinctions in the drug quantities typically possessed by users as distinguished from dealers." *Id.* Finally, it noted the defendant's conviction would stand regardless of the agent's testimony and therefore the admission of her testimony, if error, was harmless. *Id.* The Court does not view *Reynoso* as standing for the proposition—even by analogy—for which Mr. Razo cited it.

10

the *Valdivia* Court concluded that the agent's testimony fell "comfortably within the boundaries of permissible lay opinion testimony." *Id.* at 50.

In his concurrence, Judge Lipez urged the First Circuit to reexamine its position in a future en banc proceeding. *Id.* at 56. Stating that the First Circuit rule "put[s] [the First Circuit] at odds with virtually every other circuit and the commentary to Rule 701 of the Advisory Committee on Evidence," Judge Lipez wrote his concurrence "in the hope of eventually changing [the First Circuit's] law." *Id.* at 56-57. Nevertheless, Judge Lipez recognized that the panel was "[b]ound by the precedents of [the First Circuit]" and that he and his colleagues "must affirm the ruling of the trial court that Special Agent Carpio's testimony about the cell phone practices of drug traffickers was lay opinion testimony admissible under Rule 701, rather than expert testimony governed by Rule 702." *Id.* at 56.

Just as Judge Lipez and the *Valdivia* panel were bound by First Circuit precedent, this Court is obligated to apply the First Circuit's teaching; stare decisis "renders the ruling of *law* in a case binding in future cases before the same court or other courts owing obedience to the decision." *See United States v. Gonzalez-Mercado*, 402 F.3d 294, 299 (1st Cir. 2005) (quoting *Gately v. Massachusetts*, 2 F.3d 1221, 1226 (1st Cir. 1993)). Under First Circuit law, testimony by a law enforcement agent about the drug quantity signifying distribution as opposed to personal use, the tools of the drug trade, transportation of drugs, and code words would all be admissible as lay, not expert testimony. *See Maher*, 454 F.3d at 24 (holding that an officer's testimony that, based on his experience, certain post-it

11

notes were likely drug orders and the number "4" likely referred to a quantity of drug found by law enforcement "did not cross the line to become expert testimony"); *Ayala-Pizarro*, 407 F.3d at 29 (holding that an officer's testimony that heroin seized at drug points was typically packed in aluminum decks and that the heroin seized in the case was packaged in such decks was Rule 701 testimony).[2]

Finally, without citing any relevant authority, Mr. Razo raises a Confrontation Clause issue, namely that a law enforcement witness testifying as an expert will be allowed to rely on hearsay in formulating his opinions. *Def.'s Second Mot.* at 5-6. Here, however, the agents have not been designated as experts. As always, the Court will remain vigilant during the trial to avoid the admission of hearsay evidence whether from these law enforcement witnesses or from someone else.

---

[2]     To the extent Judge Lipez's disquiet foretells a change in the First Circuit approach to this issue, the Government may seek to cover its bases by designating a law enforcement agent as an expert and making the disclosures that Judge Lipez suggests. The First Circuit has addressed cases in which law enforcement agents have been designated as experts. *Reynoso*, 336 F.3d at 49 (affirming trial court determination that a DEA agent was competent to testify as an expert as to relative raw-weight distinctions in the drug quantities typically possessed by users as distinguished from dealers); *United States v. Rivera-Rosario*, 300 F.3d 1, 16-17 (1st Cir. 2002) (affirming the admission of law enforcement expert testimony as to the meaning of code words); *United States v. Hoffman*, 832 F.2d 1299, 1310 (1st Cir. 1987) (same). The agent could be presented as both a lay and expert witness, a result the First Circuit has condoned. *Valdivia*, 690 F.3d at 50 ("[T]he same witness—for example, a law enforcement officer—may be qualified to provide both law and expert testimony in a single case").

    The designation of a law enforcement officer as an expert, however, may create more problems than it solves. It could generate new and time-consuming procedural quarrels. Before trial, the Government would have to make expert witness disclosures and the defendants could—as here—demand a *Daubert* hearing as to the officer's qualifications, the scientific or other bases for the expert opinion, and the officer's methodology, issues for which law enforcement officers who typically gain expertise on the job would have no ready response. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993). At trial, a law enforcement officer's testimony could devolve into ongoing skirmishes about whether the Government's designation is adequate and whether the officer is testifying as a lay witness or an expert in giving specific testimony. Criminal trials could begin to resemble civil trials, where pretrial discovery and motion practice typically resolve these issues. In view of these concerns, the Government might well elect to maintain its position that the agent is testifying as a lay witness, a position fully consistent with the current state of First Circuit law.

The Court denies Mr. Razo's second motion in limine and holds that a case agent may give lay opinion testimony under Rule 701.

## V. MARK RAZO'S MOTION IN LIMINE REGARDING PRIOR CONVICTIONS, PRE-APRIL 2011 AND POST-AUGUST 2011 CONVERSATIONS, CO-DEFENDANT DIAZ'S STATEMENTS, ACTIVITY OUTSIDE THE DISTRICT OF MAINE, CODE WORDS, ALIASES, AND FINANCIAL TRANSACTIONS

### A. Mark Razo's Motion

In his third motion in limine, Mr. Razo challenges (in single-sentence arguments) the admissibility of the following evidence: (1) his prior convictions for possession of methamphetamine for the purpose of sale and for evading police, whether introduced in the Government's case-in-chief or during his cross-examination; (2) any testimony or evidence of drug transactions or communications between others and himself that either predate the alleged April 2011 start of the conspiracy or postdate the alleged August 2011 end of the conspiracy; (3) any testimony or evidence of drug transactions or other conduct of Barry Diaz, Mr. Razo's co-defendant, without proof of Mr. Razo's involvement in or awareness of such conduct; (4) any evidence of any activity occurring outside of the District of Maine, specifically including activity in Iowa; (5) expert testimony about the meaning of code words or drug jargon in the absence of qualification under Rule 702; (6) testimony concerning aliases allegedly used by Mr. Razo or Mr. Diaz without an appropriate foundation; and (7) evidence of financial transactions absent proof of Mr. Razo's involvement in or awareness of such transactions. *Def.'s Third Mot. in Limine*, 1-2 (ECF No. 95) (*Def.'s Third Mot.*).

### B. The Government's Response

13

In its response, the Government contends that Mr. Razo's prior convictions are admissible but suggests that the Court wait for trial to make a final determination. *Gov't's Resp. to Def. Razo's Third Mot. in Limine*, 1-2 (ECF No. 114) (*Gov't's Third Opp'n*). The Government opposes Mr. Razo's attempt to temporally limit its evidence, noting that the indictment alleges an undefined start to the conspiracy and evidence that predates April should not "automatically be excluded." *Id.* at 2. The Government does not respond to Mr. Razo's attempt to exclude evidence that postdates the alleged end of the conspiracy. *Id.* Objecting to Mr. Razo's contention that the only evidence of other conversations that should be admissible should be conversations in which he directly participated, the Government quotes a First Circuit case noting that a conspiracy is like a train and, once on board, a defendant must affirmatively step off to end his conspiratorial role. *Id.* at 3-4. Regarding activities outside the District of Maine, the Government maintains that it intends to introduce evidence of "a poly-substance conspiracy stretching across the United States" and points out that the Indictment "specifically alleges that the conspiracy occurred 'in the District of Maine and elsewhere.'" *Id.* at 4. The Government argues that testimony from experienced drug agents about drug codes is admissible under First Circuit law. *Id.* at 4-5. Turning to evidence of aliases, the Government asserts that because the wiretap interceptions contain references to Mr. Razo's and others' aliases, it is appropriate to admit evidence of those aliases. *Id.* at 5. Finally, regarding financial transactions, the Government asserts that if it can establish that the transactions were being carried out in

furtherance of a conspiracy in which Mr. Razo was a member, the evidence would be admissible. *Id.*

### C.   Discussion

#### 1.   Prior Convictions

According to the Government, Mr. Razo was convicted in 2010 of possession for sale of methamphetamine and of evading an officer against traffic; the convictions resulted in concurrent sixteen month sentences. *Gov't's Third Opp'n* at 1. The Government maintains that Mr. Razo's prior drug conviction "may become relevant and admissible under Fed. R. Evid. 404(b) based on the defenses raised at trial." *Id.* If the Government were to try to introduce evidence of the convictions under Rule 404(b), the trial court must engage in the two-step analysis for prior bad acts evidence discussed above. *See United States v. Gentles*, 619 F.3d 75, 86 (1st Cir. 2010); *Garcia*, 983 F.3d at 1172. The court must first determine whether the evidence has some "special relevance" to an issue in the case—such as intent, preparation, knowledge, plan, absence of mistake, or identity—and the court must then balance the probative value against the danger of unfair prejudice under Rule 403. *Gentles*, 619 F.3d at 86. Although admissibility under Rules 403 and 404(b) depends on the circumstances of each case, the Court notes that the First Circuit has upheld the admission of evidence of a prior drug trafficking conviction in a drug trafficking trial. *See Pelletier*, 666 F.3d at 3-7.

In the event Mr. Razo takes the stand, Federal Rule of Evidence 609 governs the admissibility of prior convictions for the purpose of impeachment. Rule 609(a)

states that "[t]he following rules apply to attacking a witness's character for truthfulness by evidence of a criminal conviction:

> (1) for a crime that, in the convicting jurisdiction, was punishable by death or by imprisonment for more than one year, the evidence:
> . . .
> > (B) must be admitted in a criminal case in which the witness is a defendant, if the probative value of the evidence outweighs its prejudicial effect to that defendant; and
>
> (2) for any crime regardless of the punishment, the evidence must be admitted if the court can readily determine that establishing the elements of the crime required proving—or the witness's admitting—a dishonest act or false statement.

FED. R. EVID. 609(a). The Government does not contend that either conviction would be automatically admissible as a crimen falsi under Rule 609(a)(2). Each conviction falls within the ten-year time limit established by Rule 609(b) and each "was punishable by . . . imprisonment in excess of one year" under Rule 609(a)(1). FED. R. EVID. 609(a)(1), (b). The admissibility of the prior convictions as impeachment evidence turns, therefore, on whether their probative value outweighs their prejudicial effect to Mr. Razo. *See* FED. R. EVID. 609(a)(1)(B). It would be premature for the Court to rule on this question outside the trial context. *See United States v. Carey*, CR-08-157-B-W-02, 2009 U.S. Dist. LEXIS 15736, *10 (D. Me. Feb. 26, 2009). The Court dismisses this part of the motion without prejudice.

### 2.    Acts Prior to Charged Dates in the Indictment

Other than generally objecting to "testimony or evidence of drug transactions or communications between the Defendant and others," Mr. Razo does not specify in his motion the evidence to which he objects as either predating or postdating the

indictment.  *Def.'s Third Mot.* at 1.  As a blanket demand, the motion must fail.

Some evidence that predates or postdates the time period alleged in the indictment

may be admissible for certain purposes.  *See* FED. R. EVID. 404(b); *United States v.*

*Kakande*, 771 F. Supp. 2d 86 (D. Me. 2011) (discussing pre-conspiracy evidence).

Some may be inadmissible.  At trial, the Court would apply the **two-step analysis**

**under Rules 403 and 404(b) described above.**  *See Gentles*, 619 F.3d at 86; *Garcia*,

983 F.3d at 1172.  The Court dismisses this part of the motion without prejudice.

### 3.    Evidence of the Acts or Statements of Others

Similarly, other than generally objecting to "testimony or evidence of drug

transactions or other conduct which the Government suggests is in furtherance of

the charged conspiracy attributable to or committed by Co-Defendant Diaz and any

other individual," Mr. Razo has not said more precisely what evidence he contends

would be inadmissible.  *Def.'s Third Mot.* at 1.  Again, the Court is unsure what

evidence Mr. Razo is concerned about.  The Government has the obligation to

demonstrate that a defendant willfully joined the conspiracy by his own words

and/or actions.  *United States v. Richardson*, 225 F.3d 46, 53-54 (1st Cir. 2000).  At

the same time, the First Circuit has ruled that, so long as certain factors are

satisfied, statements of co-conspirators may be admissible under the co-conspirator

hearsay exception.  S*ee United States v. Ciresi*, 697 F.3d 19, 25-30 (1st Cir. 2012);

FED. R. EVID. 801(d)(2)(E).  The Court dismisses this part of the motion without

prejudice.

### 4.    Expert Testimony About Code Words

Mr. Razo presented this issue in his second motion in limine and the Court has addressed it there.  The Court dismisses this part of the motion without prejudice.

### 5.    Aliases

Mr. Razo seeks to exclude "any alias alleged to have been used by either Defendant" from evidence in this trial "without there being an appropriate foundational basis." *Def.'s Third Mot.* at 2.  The Government claims that Mr. Razo and his co-defendant Barry Diaz used aliases as part of the conspiracy to distribute drugs.  *Gov't's Third Opp'n* at 5.  The Court is not in a position to determine whether the Government is going to be able to present sufficient evidence of Mr. Razo's asserted use of aliases to link the aliases to Mr. Razo.  The indictment charges that Mr. Razo is also known as "Little Mexico" and that Mr. Diaz is also known as "Lucky" and "Tonny Delacruze." *Second Superseding Indictment* (ECF No. 32).  The Court does not know what other aliases may be involved.[3]  The Court dismisses this part of the motion without prejudice.

### 6.    Financial Transactions

Mr. Razo seeks to exclude unspecified "evidence of financial transactions" from the trial of this case. *Def.'s Third Mot.* at 2.  The Government says that once a person becomes a member of a conspiracy, the conspiracy's transactions may be attributed to him. *Gov't's Third Opp'n* at 5.  Based on this skeletal point and counterpoint, the Court cannot know what the evidence is, whether there will be

---

[3]    Although Mr. Razo does not raise the issue of unfair prejudice, the Court does not view the aliases "Little Mexico," "Lucky," or "Tonny Delacruze" as particularly prejudicial.

sufficient evidence that Mr. Razo joined the conspiracy, and whether there will be sufficient evidence linking the financial transactions to the conspiracy he joined. The Court dismisses this part of the motion without prejudice.

## VI.   MARK RAZO'S MOTION IN LIMINE REGARDING INTERCEPTED PHONE CALLS

### A.   Mark Razo's Motion

On October 26, 2012, Mr. Razo moved in limine to exclude evidence of phone calls involving Mr. Razo's co-defendant Barry Diaz and other individuals, but not Mr. Razo himself. *Def.'s Fourth Mot. in Limine* (ECF No. 109).  Mr. Razo contends that the contents of these phone calls are inadmissible against him on four grounds: (1) they would violate his Sixth Amendment Confrontation Clause rights; (2) they are inadmissible hearsay; (3) they would generate unfair prejudice and would confuse and mislead the jury; and (4) they are not relevant to the pending charges against him. *Id.* at 1.  Mr. Razo lists thirteen phone calls between Barry Diaz and other individuals, either identified or unidentified, that he contends are inadmissible. *Id.* at 2.

### B.   The Government's Response

The Government filed its opposition on November 16, 2012. *Gov't's Opp'n to Def.'s Fourth Mot. in Limine* (ECF No. 124).  The Government says that, with the exception of one call, which the Government does not intend to offer at a joint trial, all of the thirteen phone calls Mr. Razo identified are "either co-conspirator statements or non-hearsay statements not offered for the truth of the matter asserted." *Id.* at 1 n.2.  The Government urges the Court to admit the co-

19

conspirator calls conditionally "pursuant to the framework set forth in *Untied States v. Petrozziello*, 548 F.2d 20 (1st Cir. 1977) and fully admit these calls once all evidence is received at trial." *Id.* In its response, the Government narrows the controversy to ten calls, noting that it does not intend to introduce three of the calls at trial. *Id.* at 1 n.2.

### C.    Discussion

#### 1.    Confrontation Clause

Regarding Mr. Razo's first point—that admission of a co-conspirator's statement would violate the Confrontation Clause, the First Circuit has repeatedly held that there is no Confrontation Clause issue with the admission of co-conspirator statements in furtherance of a conspiracy because such statements are non-testimonial. In *United States v. De La Paz-Rentas*, 613 F.3d 18 (1st Cir. 2010), the First Circuit held that "*Crawford*[4] does not apply to statements deemed non-testimonial, and statements made in furtherance of a conspiracy 'by their nature [are] not testimonial.'" *Id.* at 28 (quoting *Crawford*, 541 U.S. at 56); *see also United States v. Ciresi*, 697 F.3d 19, 31 (1st Cir. 2012) ("[W]e have already addressed this issue post-Crawford and concluded that coconspirator statements . . . are, by their nature, not testimonial"); *United States v. Malpica-Garcia*, 489 F.3d 393, 397 (1st Cir. 2007) (holding that coconspirator statements were nontestimonial because they were "made in the course of private conversations or in casual remarks that no one expected would be preserved or used later at trial"); *United States v. Hansen*, 434 F.3d 92, 100 (1st Cir. 2006) ("[T]he challenged statements are nontestimonial

---

[4]    *Crawford v. Washington*, 541 U.S. 36 (2004).

because they are either co-conspirator statements made during the course of and in furtherance of the conspiracy, or casual remarks which the declarant would not reasonably expect to be available for use at a later trial").  Assuming that the Government can sustain its evidentiary burden to establish that the contested statements were made by co-conspirators in furtherance of the conspiracy, there is no Confrontation Clause violation.

### 2.    Hearsay

Turning to Mr. Razo's hearsay objection, Rule 801(d)(2)(E) provides:

> **(d) Statements That Are Not Hearsay.**  A statement that meets the following conditions is not hearsay:
>
>> **(2) An Opposing Party's Statement.**   The statement is offered against an opposing party and:
>>
>>> **(E)** was made by the party's coconspirator during and in furtherance of the conspiracy.

FED. R. EVID. 801(d)(2)(E).  In *United States v. Colon-Diaz*, 521 F.3d 29 (1st Cir. 2008), the First Circuit reiterated that under Rule 801(d)(2)(E) a statement by a coconspirator in furtherance of the conspiracy is nonhearsay and, "[a]s nonhearsay, such statements, if admitted, may be considered for the truth of the matter asserted." *Id.* at 35.  The *Colon-Diaz* Court continued:

> To admit a coconspirator statement under Rule 801(d)(2)(E), four elements must be satisfied by a preponderance of the evidence.  First, a conspiracy must have existed, and second, the defendant must have been a member of it.  Third, the declarant must also have been a member of the conspiracy.  Fourth, the declarant's statement must have been made in furtherance of the conspiracy.

*Id.* at 35-36 (internal citations omitted).

The *Colon-Diaz* Court also explained that "to preserve an objection to the admission of a coconspirator statement under Rule 801(d)(2)(E), the defendant must ask the district court to make, at the close of the evidence, what is known as a *Petrozziello* determination." *Id.* at 36 (citing *Petrozziello*, 521 F.2d at 20). "There, the district court asks whether it is 'more likely than not that the declarant and the defendant were members of a conspiracy . . . and that the statement was in furtherance of the conspiracy." *Id.* (quoting *United States v. Castellini*, 392 F.3d 35, 50 (1st Cir. 2004) (quoting *Petrozziello*, 521 F.3d at 23)).

Mr. Razo has only made a general reference to the contested telephone calls. The Court is unaware of the content of those telephone calls and cannot know whether the Government is going to be able to demonstrate that these calls satisfy the four *Colon-Diaz* requirements for admission under Rule 801(d)(2)(E). The Court will follow the *Petrozziello* procedure, reminding defense counsel that "[t]o preserve a challenge to the result of this determination, the defendant must object." *Colon-Diaz*, 521 F.3d at 36.

### 3.    Unfair Prejudice, Jury Confusion, and Relevance

Here, as Mr. Razo has not supplied the content of the telephone calls, the Court is in no position to evaluate whether these telephone calls meet Rule 401 and 403 standards for admissibility. FED. R. EVID. 401 ("Evidence is relevant if (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action"); FED. R. EVID. 403 ("The court may exclude relevant evidence if its probative value is

substantially outweighed by a danger of one or more of the following:  unfair prejudice, confusing the issues, misleading the jury . . . .").

### D.   Conclusion

The Court dismisses this motion without prejudice.  The admission of these statements depends upon their content and the trial context.  At trial, the Government will bear the burden to demonstrate that it is more likely than not that the statements meet the four *Colon-Diaz* requirements and, if so, the statements will not be hearsay, will not present a Confrontation Clause issue, and will be relevant.  Whether they meet Rule 403 standards will still depend on their actual content and context.  Mr. Razo is free to renew his challenge to the admissibility of the telephone calls under *Petrozziello*.

## VII.   CONCLUSION

The Court DISMISSES without prejudice the Government's First Motion in Limine (ECF Nos. 76) and Defendant Mark Razo's First, Third, and Fourth Motions in Limine (ECF Nos. 93, 95, 109), GRANTS the Government's Second Motion in Limine (ECF No. 77) and DENIES Defendant Mark Razo's Second Motion in Limine (ECF No. 94).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
CHIEF UNITED STATES DISTRICT JUDGE

Dated this 17th day of December, 2012